UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JEFFREY LIGGINS,                              :

                Petitioner,       :     **MEMORANDUM DECISION**

      - v -                                   :     21-CV-6458 (DC)

MICHAEL CAPRA, Superintendent,                :

                Respondent.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        JEFFREY LIGGINS
                                   Petitioner *Pro Se*
                                   Green Haven Corrections
                                   P.O. Box 4000
                                   Stormville, NY 12582

                                   ERIC GONZALEZ, Esq.
                                   Kings County District Attorney
                                   By:   Rebecca Height, Esq.
                                           Assistant District Attorney
                                   350 Jay Street
                                   Brooklyn, New York 11201
                                             Attorney for Respondent

CHIN, Circuit Judge:

        On July 2, 2015, following a jury trial, Petitioner Jeffrey Liggins was convicted in the Supreme Court of the State of New York, Kings County (Harrington, J.), of two counts of criminal sexual act in the second degree and four counts of sexual abuse in the second degree. Dkt. 10 at 866-68. The Appellate Division, Second

Department, affirmed his convictions, *People v. Liggins*, 124 N.Y.S.3d 851 (2d Dep't 2020) ("*Liggins I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Liggins*, 152 N.E.3d 1180 (N.Y. 2020) (Rivera, J.) ("*Liggins II*").

On November 18, 2021, Liggins filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Dkt. 1. Respondent, represented by the District Attorney of Kings County, filed its opposition to the Petition on February 7, 2022. Dkt. 9.

On October 25, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

**A. *The Facts*[1]**

On August 2, 2012, thirteen-year-old K.R. helped his boss Liggins, a forty-six-year-old owner of a charter bus company, clean buses until 10:00 p.m. in a Foster Avenue bus lot owned by Liggins. Dkt. 10 at 949, 955. K.R. then accompanied Liggins to his "office," an apartment in Brooklyn. *Id.* at 949. At the apartment, Liggins instructed K.R. to sleep in Liggins's bedroom and to take NyQuil. *Id.* K.R. complied, even though he was not sick. *Id.*

---

[1] The facts are drawn from the People's brief on the direct appeal to the Appellate Division, which was filed in this Court as part of Respondent's Opposition to the Petition. A more detailed recitation of facts, which does not bear repeating, is set forth in the state appellate brief and is supported by detailed citations to the record, including the trial transcript. *See* Dkt. 10 at 948-99.

2

At approximately 2:00 a.m., Liggins sexually assaulted K.R. by performing anal and oral sex on him while K.R. pretended to sleep. *Id.* The morning after, Liggins drove K.R. back to his mechanic shop, where K.R. then called his father to pick him up. On their drive home, K.R. told his father what happened. *Id.* at 958. K.R.'s father took K.R. home and called the police. *Id.* at 959. When K.R.'s mother arrived home later that day, she found that K.R. was "[q]uiet and off to himself," and also made a call to the police department. *Id.* Police Officer Christopher Schlit responded to K.R.'s residence and found that K.R. was "very upset" and "embarrassed." *Id.* Officer Schlit took K.R. and his mother on a canvass of the neighborhood so that K.R. could identify the apartment where the incident occurred. *Id.* K.R. identified Liggins's basement apartment. *Id.* Officer Schlit knocked but there was no answer at the door. *Id.*

Officer Schlit then took K.R. and his mother to Kings County Hospital. *Id.* The triage nurse interviewed K.R. and rated him as "level two" on the Emergency Severity Index, meaning that the urgency of his treatment was "critical." *Id.* K.R. brought with him his boxer shorts (on which Liggins had ejaculated) and Q-tips with which K.R. had swabbed himself and gave them to Officer Schlit. *Id.* At approximately 8:00 p.m., Samantha Joseph, an examiner on the hospital's Sexual Assault Response Team, met with K.R., who consented to "a full head to toe forensic exam." *Id.* at 960. Joseph used a sexual assault evidence collection kit, and collected swabs from K.R.'s mouth, neck, abdomen and penis. She also collected the underwear he wore to the

3

hospital that day. Joseph documented that K.R. was cooperative, but had a "flat affect," was "emotionless," and appeared to be "traumatized." *Id.*

At approximately 9:50 p.m., Police Officer Robert Kropp, a member of the Brooklyn South Evidence Collection Team, arrived at Kings County Hospital and spoke to K.R., who he observed had a "[v]ery shy" demeanor. *Id.* Officer Schlit gave the boxer shorts and Q-tips that K.R. had given him earlier to Officer Kropp. *Id.* at 960-61. Joseph also released the sexual assault evidence collection kit, which included the underwear she had collected from K.R., to Officer Kropp. *Id.* at 961. Officer Kropp then "vouchered" the boxer shorts, Q-tips, and the sexual assault evidence collection kit. *Id.* The vouchered evidence was sent to the forensic biology laboratory of the Office of the Chief Medical Examiner ("OCME") for further investigation. *Id.*

Detective Joseph Singletary, a member of the Brooklyn Special Victims Unit, was called to Kings County Hospital and met with K.R. and K.R.'s parents. *Id.* Detective Singletary noted that K.R. was "clearly upset" and "shaking." *Id.* After speaking with K.R. and both of K.R.'s parents, Detective Singletary identified Liggins as a suspect. *Id.* On August 16, 2012, Detective Singletary arrested Liggins. *Id.* On October 22, 2013, Detective Singletary executed a court order to take a swab from the inside of Liggins's cheeks. *Id.* Detective Niurca Quinones, Detective Singletary's colleague, assisted Detective Singletary in vouchering the swab. *Id.* at 597. Detective Singletary then sent the swab to the OCME lab for DNA analysis. *Id.* at 962.

4

On August 6, 2012, OCME received the vouchered sexual assault evidence collection kit, including K.R.'s underwear, and on February 15, 2013, OCME received K.R.'s boxers and the vouchered Q-tips. *Id.* On October 24, 2013, OCME received the buccal swab taken from Liggins. *Id.* at 963. These items were DNA tested, and Michael McCasland, a criminalist at OCME, conclusively matched semen from K.R.'s boxer shorts to Liggins's DNA. *Id.* at 966.

## B. *Procedural History*

### a. *State Court Proceedings*

#### 1. *The Trial Court*

Later that year, Liggins was charged with two counts of criminal sexual act in the second degree and four counts of sexual abuse in the second degree.[2] *Id.* at 950. At trial, K.R. -- who by then was 16 years old -- testified about his experience the night of August 2, 2012, and the lasting effects the abuse had on him. *Id.* at 332-434. K.R.'s father, Police Officers Schlit and Kropp, and Detectives Singletary and Quinones also testified for the People, detailing their interactions with K.R. in the moments after the assault. *See id.* at 452-555, 596-598. Doctor Anne Meltzer, an expert on child psychology and sexual abuse, testified about common behaviors of sexual assault victims. *Id.* at 567-581. Samantha Joseph testified for the People as well, explaining her

---

[2] Defendant was also charged under the same indictment with other offenses that were either dismissed or were not put to the jury.

5

treatment of K.R. at Kings County Hospital. *Id.* at 599-634. Finally, Michael McCasland testified for the People, explaining his DNA analysis and how he concluded that the semen on K.R.'s boxer's matched Liggins's DNA. *Id.* at 635-93. Only Liggins testified for the defense. *Id.* at 705-763.

The jury convicted Liggins on all counts. *Id.* at 866-68. The trial court then adjudicated Liggins as a second child sexual assault felony offender pursuant to N.Y.C.P.L. § 440.19[3] and thereafter sentenced Liggins to two consecutive 15-year prison terms (a total of 30 years), with 20 years of post-release supervision on the criminal sexual act counts, with concurrent one-year terms on the sexual abuse counts. *Id.* at 897.

### 2. *The Direct Appeal*

On May 30, 2019, Liggins, represented by counsel, appealed to the Appellate Division, Second Department, arguing that (1) the admission of the DNA evidence at trial denied him of his Sixth Amendment right to confront the witnesses

---

[3] The court adjudicated Liggins as a second child sexual assault felony offender because he had three prior convictions for sexual felonies against boys under the age of fifteen: (1) a 1994 conviction for Sexual Abuse in the First Degree, wherein Liggins pleaded guilty to sexually abusing two male victims, aged twelve and fifteen, while claiming to be a Boy Scout leader and providing NyQuil to one of the victims, (2) a 2003 conviction for Attempted Sexual Abuse in the First Degree, wherein Liggins rubbed his penis against a nine-year-old boy, whom defendant met while working at an overnight camp, and (3) a 2005 conviction for Attempted Sexual Abuse in the First Degree, wherein Liggins had rubbed his penis against a nine-year old boy, whom defendant met while volunteering at an after-school program. Dkt. 9 at 4-5.

against him; (2) his counsel was ineffective for failing to preserve the issue; and (3) his sentence was excessive and should be reduced in the interest of justice. *Id.* at 901-39.

On July 8, 2018, the Appellate Division affirmed Liggins's convictions and sentence. *Liggins I,* 124 N.Y.S.3d at 851. The court held that Liggins's argument that his Sixth Amendment rights under the Confrontation Clause were violated was unpreserved for appellate review and declined to review the issue in the exercise of its interest of justice jurisdiction. *Id.* It also found that Liggins's argument that his counsel was ineffective for failing to raise the Confrontation Clause issue was meritless, as the issue was "not 'so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it.'" *Id.* (quoting *People v. Rodriguez,* 101 N.E.3d 977, 977 (N.Y. 2018)). Finally, the Appellate Division held that "[t]he sentence imposed was not excessive." *Id.*

On September 12, 2018, the New York Court of Appeals denied Liggins's application for leave to appeal. *Liggins II,* 152 N.E.3d at 1180 (Rivera, J.).

### b. *Proceedings in this Court*

On November 18, 2020, proceeding *pro se*, Liggins filed the Petition asserting that (1) the trial court improperly admitted the DNA reports through the OCME analyst at trial, thereby violating his right of confrontation; (2) his trial counsel was ineffective for failing to raise the Confrontation Clause issue; and (3) his sentence was excessive. Dkt. 1.

On February 2, 2020, the District Attorney's Office filed its opposition to the Petition. Dkt. 9. On June 22, 2022, Liggins filed his reply. Dkt. 14.

On October 25, 2023, the case was reassigned to the undersigned.

## DISCUSSION

A. *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

8

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C. § 2254(b)(1)(A). This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state

9

court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases). Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

B.  *Analysis*

In the Petition, Liggins contends that (1) the trial court improperly admitted the DNA reports through Michael McCasland at trial and thus violated his right of confrontation; (2) his trial counsel was ineffective for failing to raise the Confrontation Clause issue; and (3) his sentence was excessive.  Dkt. 1.  I discuss each claim in turn.

a.  *The Confrontation Clause*

The Sixth Amendment's Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  In *Crawford*, the Supreme Court held that "out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by court."  541 U.S. at 54, 58.  It specifically identified "[v]arious formulations of th[e] core class of 'testimonial' statements" that are barred absent cross-examination:

> (1) "*ex parte* in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially";

11

>   (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and
>
>   (3) "statements . . . made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Id.* at 51-52 (citations omitted). The Supreme Court has made clear that the Confrontation Clause applies to forensic reports and testimony being offered to prove a fact in a criminal trial. *See, e.g., Bullcoming v. New Mexico*, 564 U.S. 647, 657-58 (2011) ("The Confrontation Clause . . . does not permit the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification."); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329 (2009) (holding that "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits" by an individual that has not been subjected to cross-examination); *Williams v. Illinois*, 567 U.S. 50, 83-84 (2012) (plurality opinion) ("We [have] emphasized that if a statement is not made for 'the primary purpose of creating an out-of-court substitute for trial testimony,' its admissibility 'is the concern of state and federal rules of evidence, not the Confrontation Clause.'" (citation omitted).

    Consistent with the Supreme Court precedent outlined above, the New York Court of Appeals has held that the Confrontation Clause is violated when

12

laboratory reports as to the DNA profile generated from evidence submitted to a laboratory by the police in a pending criminal case are admitted into evidence and the analyst who generated or independently reviewed the DNA profile is not present for or has not been subject to cross-examination. *People v. John*, 52 N.E.3d 1114, 1123-24 (N.Y. 2016). It concluded that "an analyst who witnessed, performed or supervised the generation of [a] defendant's DNA profile, or who used his or her independent analysis on the raw data, as opposed to a testifying analyst functioning as a conduit for the conclusions of others, must be available to testify." *Id.* at 1128.

Liggins argues that that his Sixth Amendment right to confrontation was violated when Michael McCasland, the OCME analyst, testified connecting Liggins's DNA to the semen found on K.R.'s boxers. Dkt. 1 at 24-30. Liggins argues that McCasland "was not involved in the electrophoresis stage of the testing process of the boxers" and the "electrophoresis stage is a critical step of which the testifying witness must have personal knowledge." *Id.* at 26 (quoting *People v. John*, 52 N.E.3d at 1122-23). The Appellate Division rejected this claim, finding that it was "unpreserved for appellate review, and we decline to review this issue in the exercise of our interest of justice jurisdiction." *Liggins I*, 124 N.Y.S.3d at 851.

Habeas relief is thus not available to Liggins for this claim. For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state

13

procedural bar." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Appellate Division clearly and expressly stated that Liggins's confrontation claim was unpreserved for appellate review. *Liggins I*, 124 N.Y.S.3d at 851.

Moreover, Liggins has failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748..

Liggins's confrontation claim fails on the merits in any event.  Under New York law, the admission of DNA evidence does not violate the Confrontation Clause where an analyst who performed testing on the DNA is available to testify at trial.  *See People v. John*, 52 N.E.3d at 1128 ("We conclude that an analyst who witnessed, performed or supervised the generation of defendant's DNA profile, *or* who used his or her independent analysis on the raw data. . . . must be available to testify." (emphasis added)).  McCasland performed an independent analysis on the raw data, *see* Dkt. 10 at 685 (McCasland testifying "I was the one that analyzed the results for both the DNA profiles from the evidence and the DNA profile that was obtained from [] Liggins"]); *id.* at 688 (McCasland testifying "I analyzed the results [of DNA testing on defendant's

14

exemplar] at my desk"), testified at trial, and was subject to cross examination. Dkt. 10 at 680-93. Accordingly, Liggins's confrontation claim fails on the merits.

### b. *Ineffective Assistance of Counsel*

In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective-assistance-of-counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to

15

provide meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance. *See Alvarez*, 125 N.E.3d at 120.

Liggins contends that his counsel was ineffective for failing to raise the confrontation issue at trial. Dkt. 1 at 39-40. The Appellate Division rejected this claim on the merits, holding that the "issue was not 'so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it.'" *See Liggins I*, 124 N.Y.S.3d at 851 (citing *People v. Rodriguez*, 101 N.E.3d 977, 977 (N.Y. 2018)). This determination is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal court conducting habeas review unless the petitioner can establish that the state court's conclusion was "unreasonable," *see* 28 U.S.C. § 2254(d). For the reasons set forth above, Liggins's confrontation claim is meritless, and therefore the district court's conclusion that Liggins's counsel was not ineffective for failing to raise this claim was reasonable. *See Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001) ("counsel was not ineffective for failing to raise . . . meritless argument."). Liggins's ineffective assistance claim accordingly fails.

*c. Liggins's Sentence*

Finally, Liggins claims that his sentence was excessive given that "the crimes occurred during a single occurrence." Dkt. 1 at 31-38. This claim also fails. The Appellate Division rejected this claim on the merits, finding that the sentence imposed was not excessive. *Liggins I*, 124 N.Y.S.3d at 851. The Appellate Division's conclusion is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned unless Liggins can establish that the decision was unreasonable, *see* 28 U.S.C. § 2254(d). Liggins fails to meet this burden.

There is "[n]o federal constitutional issue . . . presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Liggins was adjudicated a second child sexual assault felony offender pursuant to N.Y.C.P.L. § 440.19. Accordingly, he faced up to fifteen years in prison for each of the second-degree sexual assault counts. N.Y.P.L. §§ 70.07, 130.45; N.Y.C.P.L. § 400.19. Liggins was sentenced to fifteen years' imprisonment with twenty-years' post-release supervision on each count, to run consecutively to each other but concurrently to Liggins's one-year sentences on the sexual abuse convictions. This was within the range prescribed by state law. Moreover, Liggins had *three* prior convictions for sexually assaulting boys under the age of fifteen. Accordingly, Liggins's sentence was

not unreasonable. Liggins's excessiveness argument therefore fails.[4]

## CONCLUSION

Liggins has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his habeas petition is denied. Additionally, I decline to issue a certificate of appealability because Dupree has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2254.

The Clerk of the Court shall enter judgment accordingly and close this case. The Clerk of Court shall also mail copies of this memorandum decision and the judgment to Dupree at the address set forth above.

SO ORDERED.

Dated:   New York, New York
        February 21, 2023

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation

---

[4] Liggins argues that his sentence was excessive in part because the prosecutor's remarks during trial constituted improper vouching and because the People failed to file a timely Second Child Sexual Assault Felony Offender Statement pursuant to N.Y.C.P.L. § 400.19(2). But Liggins's vouching argument is irrelevant to the excessiveness inquiry here, and accordingly, the Court declines to address it. Further, Liggins failed to raise the timeliness of the Second Child Sexual Assault Felony Offender Statement on direct appeal, and accordingly, this claim is not ripe for habeas review. *See Jackson*, 763 F.3d at 115. In any event, this argument is meritless -- as the state court held in denying Liggins's motion to set aside the verdict, Liggins was "given effective oral notice before trial" that the People planned to proceed under § 400.19(2), and accordingly, the People's purported failure to timely file the Statement was harmless. *People v. Liggins*, 12 N.Y.S.3d 533, 540 (Sup. Ct. N.Y. County 2015).